IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br>v.<br><br>OLUWOLE ADEGBORUWA and ENRIQUE ISONG<br><br>　　　　　　　Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO SEVER AND GRANTING MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT**<br><br>Case No. 2:19-cr-00260-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

　　　　Before the court are two competing motions. Defendant Oluwole Adegboruwa moves to sever his case from that of his codefendant, Enrique Isong, so that he can go to trial as scheduled on September 5, 2023. ECF No. 569. The government, on the other hand, moves to continue the jury trial for about 90 days to permit a joint trial for the defendants. ECF No. 554. The court heard oral argument on the motions on August 24, 2023. In a docket text order later that day, it DENIED defendant Adegboruwa's motion to sever and GRANTED the government's motion to continue the trial. The court files this opinion to more fully explain the basis of its ruling.

## BACKGROUND

　　　　In July 2019, the government obtained an indictment against Adegboruwa on a single count for conspiracy to distribute oxycodone. The court ordered that he be detained pending trial. Adegboruwa moved to continue his trial date twice. In January 2020, the government obtained a superseding indictment. In addition to the conspiracy to distribute oxycodone charge, the superseding indictment added counts against Adegboruwa for continuing criminal enterprise, attempted possession of fentanyl with intent to distribute, conspiracy to commit money laundering,

distribution of oxycodone, and use of the U.S. mail in furtherance of a drug trafficking offense. The superseding indictment also added related charges against seven new codefendants. Six of the codefendants were arrested and made initial appearances before this court. But the government was unable to locate the seventh codefendant, Enrique Isong, who remained at large.

After the government obtained the superseding indictment, the defendants agreed to continue the trial date several times. In February 2021, one of the codefendants filed a *James* hearing motion. Adegboruwa and several other defendants joined the motion. The defendants moved to continue the *James* hearing twice. In April 2021, Adegboruwa filed a motion to suppress evidence and for a *Franks* hearing. The court granted a codefendant's motion to strike the *James* hearing pending the resolution of Adegboruwa's motion to suppress. In August 2021, the court denied Adegboruwa's motion to suppress. Three days later the court rescheduled the *James* hearing for November 2021.

The defendants filed numerous motions to continue the *James* hearing. First the parties represented that they needed time to explore a potential resolution of the case. The court also continued the *James* hearing because a codefendant replaced his counsel and new counsel needed additional time to prepare for the hearing. The court again continued the hearing to permit defense counsel additional time to prepare. Then, counsel for Adegboruwa abruptly withdrew, requiring two further continuances of the *James* hearing. Because Adegboruwa's new counsel needed additional time to prepare, the court rescheduled the joint trial for all defendants for a four-week period beginning in August 2023. The court finally held the *James* hearing in May 2023 and entered its order on the *James* motion in July 2023.

In May, June, and July of 2023, all six of Adegboruwa's codefendants who had been arraigned changed their pleas to guilty. To accommodate the shrinking number of defendants going

to trial, the court granted a short continuance of the trial date until September 5, 2023, and shortened the trial to two weeks. On August 2, 2023, the government obtained a second superseding indictment to update the counts remaining in the case. The second superseding indictment charged Adegboruwa with counts for continuing criminal enterprise, conspiracy to distribute oxycodone, distribution of oxycodone, use of the U.S. mail in furtherance of a drug trafficking offense, and conspiracy to commit money laundering. The second superseding indictment also charged Isong, who had not yet been arrested or arraigned, with conspiracy to distribute oxycodone, distribution of oxycodone, and conspiracy to commit money laundering.

Between August 9, 2023 and August 15, 2023, Adegboruwa filed a number of motions in limine to exclude evidence from the upcoming trial. He argued, for example, that the court should exclude all of the government's expert witnesses because it filed its disclosure of expert witnesses four days late. Adegboruwa also argued that the court should exclude evidence that he sold other controlled substances, such as morphine, Adderall, hydrocodone, oxymorphone, and Vicodin, because the government had not provided adequate pretrial notice of its intent to introduce evidence of uncharged bad acts as required by Rule 404(b) of the Federal Rules of Evidence. Finally, Adegboruwa argued that the court should exclude messages recovered from electronic devices seized by the government and summaries of voluminous evidence because the government did not provide adequate pretrial notice of this evidence.

While preparing for trial, the government obtained information regarding Isong's whereabouts. On August 17, 2023, the U.S. Marshal's Service arrested Isong. On August 21, 2023, the government moved to continue the trial date to allow Isong's counsel time to get up to speed on the case so that the court could hold a single trial for the charges against Adegboruwa and Isong. Counsel for Isong agreed to the proposed continuance. On August 23, 2023, Adegboruwa filed a

motion to sever the charges against Isong from his case so that the trial could proceed as planned, with jury selection to begin on August 31, 2023, and opening arguments to be held on September 5, 2023. Adegboruwa argues that a severance is necessary because the delay required for a joint trial would be unduly prejudicial.

## ANALYSIS

### I. ADEGBORUWA'S MOTION TO SEVER

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 506 U.S. 534, 537 (1993). "Joint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *United States v. Garcia*, 74 F.4th 1073, 1110 (10th Cir. 2023) (citation omitted). Nonetheless, Rule 14(a) of the Federal Rules of Criminal Procedure provides a mechanism for severing a properly joined defendant for trial: "If the joinder of . . . defendants in an indictment . . . for trial appears to prejudice a defendant or the government, the court may order separate trials . . . ." To prove that severance is required under Rule 14(a), a defendant must show "actual prejudice outweighing the expense and inconvenience of separate trials." *Garcia*, 74 F.4th at 1110 (citation omitted).

Adegboruwa argues that he will suffer two distinct forms of prejudice if his motion to sever is denied. First, he asserts that the government will obtain an unfair advantage because his motions to exclude evidence based upon untimely notice will be rendered moot. Second, he contends that a failure to sever will prejudice his right to a speedy trial.

#### A. *Prejudice Caused by Loss of Motions to Exclude Evidence*

Defendants typically argue that they will be prejudiced by a joint trial because they intend to present a defense that conflicts with a codefendant's defense, *see Zafiro*, 506 U.S. at 538, or

because evidence relevant to the charges against a codefendant will unfairly prejudice the jury against the defendant, *see Garcia*, 74 F.4th at 1110. Adegboruwa, however, proffers a different argument. He speculates that the government decided to locate and arrest Isong only after reviewing his motions in limine to exclude the government's expert witnesses, Rule 404(b) evidence, electronically stored messages, and summaries of voluminous exhibits due to untimely disclosures. Adegboruwa accuses the government of arresting Isong at the last minute in order to gain an unfair tactical advantage by forcing a continuance of the trial, mooting his untimely disclosure arguments. He argues that the loss of these arguments would prejudice him because a jury would be more likely to return a not-guilty verdict if the government were prohibited from introducing the challenged evidence at trial. During oral argument, he argued that if the court were to exclude all of the government's experts, he would be acquitted because the United States would not be able to prove that the substances it seized were, in fact, oxycodone.

As a preliminary matter, the court finds that the government did not engage in a scheme to belatedly pursue Isong's arrest in order to force a continuance and moot Adegboruwa's motions in limine. In an in camera proceeding, the government explained the circumstances of Isong's arrest. The court is satisfied that that the government did not act in bad faith. But whether or not the government acted in bad faith, the court must still determine if the prejudice claimed by Adegboruwa justifies a severance. The answer is no for two reasons.

First, this is not the type of prejudice that would justify severance. In order to prove that severance is required, "a defendant must show more than 'that separate trials may have afforded a better chance of acquittal'; rather, the defendant 'must show the right to a fair trial is threatened or actually impaired.'" *Garcia*, 74 F.4th at 1110 (citation omitted). Adegboruwa argues that he would be prejudiced by a continuance to accommodate a joint trial because he would have better odds of

5

obtaining an acquittal if the court held the trial as scheduled and excluded the government's expert witnesses and other evidence due to lack of adequate notice. But it is not enough to show better odds of a favorable outcome. Adegboruwa must show that his right to a fair trial would be threatened or impaired. And there is nothing fundamentally unfair about a trial in which the government is allowed to introduce competent evidence after the defendant receives adequate pretrial notice of the evidence. Although Adegboruwa understandably prefers the remedy of exclusion of evidence to a continuance to permit additional time to prepare, that is not the standard for evaluating prejudice. Because Adegboruwa's right to a fair trial would not be infringed by a continuance, any prejudice occasioned by the loss of the motions in limine would not justify a severance.

Second, Adegboruwa has not shown that he would be prejudiced. His argument presumes that he would prevail on his motions to exclude based on untimely disclosure and that the government would be forced to go to trial without the benefit of key evidence. Although the court need not definitively rule on those motions here, the court has reviewed them and finds that Adegboruwa has not presented compelling arguments for the exclusion of the evidence.

Adegboruwa moved to exclude all of the government's expert witnesses because it did not comply with a relatively new local rule requiring the disclosure of experts 30 days before the final pretrial conference. *See* DUCrimR 16-1(c). The government mistakenly believed that the new rule required disclosure 30 days before the trial, causing it to file its expert notices four days late. Adegboruwa argued that the court should sanction the government for the late disclosure by excluding all of its expert witnesses at trial. When evaluating an appropriate sanction for a failure to comply with a deadline to disclose an expert or an expert report, courts should consider three factors: (1) the reason for the delay, including whether the government acted in bad faith, (2)

prejudice to the defendant cause by the delay, and (3) "the feasibility of curing the prejudice with a continuance." *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988). "In the absence of a finding of bad faith, the court should impose the least severe sanction that will accomplish prompt and full compliance . . . . The preferred sanction is a continuance. It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002) (citations omitted). Here, the government did not act in bad faith. It misread a new local rule. And although Adegboruwa raised generic assertions of prejudice caused by the four-day delay, he does not assert anything specific that he is unable to do to counter an expert's testimony due to the delay. Nor has he presented a compelling reason why a short continuance of the trial to permit extra time to meet the proposed expert testimony would not be the preferable sanction here. Accordingly, the court would not have excluded the government's experts at trial.

Adegboruwa also moved to exclude the government's proposed Rule 404(b) evidence due to an allegedly untimely disclosure. On August 9, 2023, the government provided notice that it intended to introduce evidence that Adegboruwa sold controlled substances over the internet for which he was not charged. That same day, Adegboruwa moved to exclude this evidence based on Rule 404(b)(3), which requires the government to provide reasonable written notice of its intent to offer character evidence before trial "so that the defendant has a fair opportunity to meet it." Because Adegboruwa did not provide any argument or caselaw suggesting that giving notice 25 days before the start of trial is inadequate, the court would not have granted this motion in limine either. Moreover, Adegboruwa has not convinced the court that the proposed 404(b) evidence is particularly important to the government's case such that its exclusion would significantly influence the jury's verdict.

Adegboruwa also moved to exclude the many communications retrieved from electronic devices seized by the government. He argued that the government failed to comply with Rule 12(b)(4) of the Federal Rules of Criminal Procedure, which provides that "the defendant may, in order to have an opportunity to move to suppress evidence . . . , request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16." Adegboruwa made a generic request for notice of evidence that the government intended to use at trial in December 2022. He asserted that the court should exclude the statements because the government did not provide a timely response to this motion. This argument is particularly weak. In November 2021, the government had already provided a detailed list of messages that it intended to introduce at trial in response to the *James* hearing motion then pending before the court. Adegboruwa had ample notice of these messages to afford an opportunity to file a motion to suppress.

Finally, Adegboruwa moved to exclude proposed summaries of voluminous evidence and demonstratives summarizing witness testimony because the government allegedly failed to provide adequate notice under Rule 12(b)(4). Notably, Adegboruwa did not assert inadequate notice of the underlying evidence. He argued that notice of the summaries, which the government provided on August 9, 2023, was insufficient. While Rule 12(b)(4) allows criminal defendants to request notice of intent to use evidence, it does not require notice of how the government intends to use the evidence. Accordingly, the court would not have excluded the summaries due to lack of adequate notice under Rule 12(b)(4).

In short, the court finds that Adegboruwa has not been prejudiced by the loss of his motions to exclude evidence based on inadequate notice. Thus, he has not met his burden of showing

"actual prejudice outweighing the expense and inconvenience of separate trials." *Garcia*, 74 F.4th at 1110 (citation omitted).

  B. *Prejudice to Adegboruwa's Speedy Trial Rights*

Adegboruwa also argues that a denial of his motion to sever, and the accompanying delay to his trial, would prejudice his speedy trial rights under the Sixth Amendment of the Constitution. Whether a defendant has been denied the right to a speedy trial in violation of the Sixth Amendment is determined on a case-by-case basis by considering four factors enumerated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). Those factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant. *Id.* at 530.

   1) Length of the Delay

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. The length of delay that will trigger an analysis of all of the *Barker* factors depends upon the particular circumstances of each case. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id.* "The length of delay is measured from the time at which the speedy trial right attaches: the earlier of either arrest or indictment." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006). Adegboruwa was arrested on May 23, 2019. Including the 90-day continuance requested by the government, the total length of delay until trial would be approximately four and a half years.

The Tenth Circuit has held that in a relatively simple case involving one defendant and one count of drug trafficking, a delay approaching one year was sufficient to trigger a broader *Barker* analysis. *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995). Additionally, that court has

9

held that a delay of seventeen and a half months for charges of armed bank robbery and brandishing a firearm triggered further analysis because "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice." *Batie*, 433 F.3d at 1290. But the Tenth Circuit has recognized that "a longer delay is tolerable for more complex cases such as conspiracy." *Gomez*, 67 F.3d at 1521, *accord United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) ("[E]ven a two-year interval between charges and trial may not be deemed a 'delay' when the charges are complex.").

This is an extraordinarily complex case. The government charged eight defendants with multiple crimes, including two conspiracy counts and a count for continuing criminal enterprise. Discovery has also been extensive, involving thousands of electronic messages recovered by the government. The government represents that had anticipated calling over 30 witnesses and presenting around 500 exhibits at trial. But four and a half years is a very lengthy delay and, as the government concedes, is sufficient to be presumptively prejudicial and to trigger an analysis of all four of the *Barker* factors. Because the court finds that the amount of delay in this case is sufficient to trigger a broader Sixth Amendment analysis, it must consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett v. United States*, 505 U.S. 647, 652 (1992). The length of the delay here weighs in favor of finding a Sixth Amendment violation.

### 2) Reason for the Delay

The second factor is the reason for delay. That factor is often "[t]he flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). "[I]ntentional government tactics to delay the trial weigh heavily against the government[, while] 'neutral' reasons (such as 'overcrowded courts') weigh against the government but less so." *United States v. Keith*, 61 F.4th 839, 852 (10th Cir. 2023) (quoting *Barker*, 407 U.S. at 531). And "a valid reason, such as a missing

witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. Moreover, "a defendant's actions that delay his own trial weigh heavily against him." *Keith*, 61 F.4th at 852.

There are several reasons for the delay in this case. After Adegboruwa made his initial appearance in June 2019, he moved to continue the trial twice in order to afford his attorneys additional time to prepare a defense. In February 2020, the government obtained a superseding indictment, adding six codefendants to the case. Then in March 2020, the COVID-19 pandemic struck, and the court entered a series of general orders excluding time under the Speedy Trial Act from all criminal cases due to the inability to hold jury trials. From March 2020 through April 2021, the court continued the trial several times, both to permit the parties additional time to prepare for a complex multi-defendant trial, and because the pandemic precluded jury trials during that period of time.

Next, a period of delay followed attributable to pretrial motions filed by the defendants. In February 2021, one of the codefendants filed a *James* hearing motion. Adegboruwa and several other defendants joined the motion. The defendants moved to continue the *James* hearing twice. In April 2021, Adegboruwa filed a motion to suppress evidence and for a *Franks* hearing. The court granted a codefendant's motion to strike the *James* hearing pending the resolution of Adegboruwa's motion to suppress. In August 2021, the court denied Adegboruwa's motion to suppress and rescheduled the *James* hearing for November 2021.

The defendants filed numerous motions to continue the *James* hearing. First the parties represented that they needed time to explore a potential resolution of the case. The court also continued the *James* hearing because a codefendant replaced his counsel and new counsel needed additional time to prepare for the hearing. The court again continued the hearing to permit defense counsel additional time to prepare. The court eventually set the *James* hearing for December 2022.

11

Counsel for Adegboruwa appeared at the hearing and waived his motion for a pretrial *James* determination due to settlement discussions with the government. Because of these changed circumstances, the court continued the *James* hearing. But later that same day, Adegboruwa's attorney moved to withdraw, citing irreconcilable differences. The court later appointed new counsel for Adegboruwa and rescheduled the *James* hearing for May 2023 and the trial for August 2023 to allow Adegboruwa's counsel additional time to prepare for the hearing and for the trial. The court held the *James* hearing in May 2023 and entered its order on the *James* motion in July 2023.

Finally, the government seeks to delay the trial by another 90 days to accommodate a joint trial with Isong.

The first period of delay, June 2019 through March 2020, is attributable to Adegboruwa and his counsel's need to prepare for trial. The second period of delay, March 2020 through April 2021, is attributable to two causes: (1) the need for additional time to prepare for a complex trial, which is attributable to Adegboruwa and his six new codefendants and (2) the COVID-19 pandemic, which precluded jury trials during this period of time. "Delays owing to the nature of large, multidefendant conspiracies with vast discovery are justifiable. This reason slightly favors the government." *Keith*, 61 F.4th at 853 (citation omitted). Moreover, delays attributable to the need for new counsel for codefendants to prepare for trial are valid and cut against finding a constitutional violation. *Id.* Finally, the Tenth Circuit has held that the COVID-19 pandemic was a truly neutral justification for delay that does not favor either the government or defendants. *Id.* The court finds, however, that given the number of new defendants and the complexity of this case, a trial was not feasible during this second period of time, regardless of COVID-19 court closures. Accordingly, this second period of time is attributable to the complexity of the case and

the need for new codefendants to get up to speed. Thus, the first and second periods of delay slightly favor the government.

The third period of delay, April 2021 through July 2023, is attributable to two pretrial motions: (1) Adegboruwa's motion to suppress and (2) the frequently delayed motion for a *James* hearing. The court notes that none of the many delays in resolving these motions brought by Adegboruwa and his codefendants were caused by the government, which reasonably complied with briefing deadlines and was ready and willing to move the motions to a resolution. Adegboruwa's codefendants, on the other hand, delayed the *James* hearing on multiple occasions to explore settlement and to accommodate changes in counsel. Adegboruwa did not object to any of these continuances. Indeed, he directly caused at least some of the delay. Adegboruwa changed counsel twice during this period of time: once in September 2022, and again in December 2022. The second change in counsel necessitated a delay of several months to allow his new counsel to prepare for both the *James* hearing and the trial in this case. Because this third period of delay was caused (1) by motions filed by or joined by Adegboruwa and (2) by his changes in counsel, this period of delay cuts against finding a speedy trial violation.

The fourth period of delay is the 90-day continuance requested by the government to allow a joint trial with the recently arrested codefendant, Isong. Delays that occur because a codefendant needs more time for "newly appointed counsel to review discovery and prepare for trial. . . . is a valid reason . . . that does not support [a] constitutional claim." *Id.*

Thus, taking into account these various periods of delay, the court finds that, overall, the reason for delay factor weighs against finding that Adegboruwa's speedy trial rights would be prejudiced by a continuance to accommodate a joint trial.

    3)    The Defendant's Assertion of his Speedy Trial Rights

"At the third step of the *Barker* test, [courts] assign strong weight to the defendant's assertion of his constitutional speedy-trial right . . . ." *United States v. Margheim*, 770 F.3d 1312, 1328 (10th Cir. 2014). Courts "'may weigh the frequency and force of [the defendant's] objections' to the delay." *Id.* (citation omitted). But "assertion of the right to a speedy trial 'is not satisfied merely by moving to dismiss after the delay has already occurred.'" *Id.* (citation omitted). This consideration may be the most import of the four *Barker* factors. *United States v. Batie*, 433 F.3d 1287, 1291 (10th Cir. 2006) ("Perhaps most important is whether the defendant has actively asserted his right to a speedy trial."). "The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531–32.

This factor weighs heavily against finding that Adegboruwa's speedy trial rights would be prejudiced by the continuance requested by the government. Adegboruwa concedes that he never asserted his speedy trial rights prior to filing his motion to sever.

### 4) Prejudice to the Defendant

The final *Barker* factor to consider is the prejudice to the defendant. This factor is evaluated in light of three main interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Impairment of the defense is the most important of these interests, and prevention of oppressive pretrial incarceration is the second most important." *United States v. Hicks*, 779 F.3d 1163, 1169 (10th Cir. 2015).

The first two subfactors weigh in favor of finding a speedy trial violation. Adegboruwa has been detained for over four years. Without a doubt, this is a substantial period of time for pretrial incarceration. And although Adegboruwa did not raise this issue in his briefing, the court presumes

14

that he has experienced anxiety and concern regarding the outcome of the criminal charges against him. But the third subfactor does not favor a finding that his constitutional speedy trial rights have been violated. As discussed above, Adegboruwa has not raised a valid concern that additional delay to the trial in this case will prejudice his defense.

Considering these subfactors, the court finds that Adegboruwa's lengthy pretrial detention weighs in his favor.

### 5) Weighing the *Barker* Factors

In sum, the first and fourth *Barker* factors—length of the delay and prejudice to the defendant—weigh in favor of a finding that Adegboruwa's speedy trial rights would be prejudiced by the denial of a motion to sever. But the second and third factors weigh against finding that his constitutional rights would be prejudiced. The reason-for-delay factor weighs against Adegboruwa's claims of prejudice because the delays in this case are not attributable to the government and Adegboruwa caused at least some of the delay. Most importantly, the assertion-of-speedy-trial-rights factor weighs heavily against him because he concedes that he never asserted his right to a speedy trial until he filed his motion to sever. This third factor is the most important consideration. As the Supreme Court has held, "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531–32. Weighing all of the *Barker* factors, the court finds that Adegboruwa's speedy trial rights would not be prejudiced by denying his motion to sever and continuing the trial date.

\* \* \*

The court concludes that Adegboruwa has not shown that he would be prejudiced by either the loss of his motions to exclude evidence for inadequate notice or by an infringement of his speedy trial rights. Therefore, he has not shown actual prejudice that outweighs the substantial

15

preference for joint trials expressed by the Supreme Court and the Tenth Circuit. Accordingly, the court denies Adegboruwa's motion to sever his case from that of Isong. ECF No. 569.

## II. THE GOVERNMENT'S MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The court now turns to the government's motion to continue the trial by about 90 days and to exclude that period of time from the calculation required by the Speedy Trial Act. Isong agrees that a continuance is necessary for him to prepare for trial. Adegboruwa objects to the continuance. Thus, the court examines whether time may be excluded as to each defendant separately.

*A. Isong*

Isong was first arrested on August 17, 2023, over four years after this case began, and was transported to this district just days ago. As discussed above, this case is very complex and involves an extensive amount of discovery. Thus, counsel for Isong asserts that he cannot possibly be prepared to present a constitutionally competent defense by the scheduled trial date. Defense counsel stipulates to the 90-day continuance requested by the government. Considering the factors laid out in 18 U.S.C. § 3161(h)(7)(B), the court finds that the time between August 21, 2023 and the new trial date must be excluded under the Speedy Trial Act. Pursuant to 18 U.S.C. § 3161(h)(7), the court finds that the ends of justice served by the continuance outweigh the best interests of the public and the defendant in a speedy trial.

*B. Adegboruwa*

Because Adegboruwa objects to the continuance, the court considers whether an exclusion of time is appropriate under 18 U.S.C. § 3161(h)(6). This provision excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." "The obvious purpose behind [this] exclusion is to accommodate the efficient use of prosecutorial and judicial resources in trying

16

multiple defendants in a single trial." *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir. 1986). "The question in examining an exclusion under [§ 3161(h)(6)] is whether the delay attributable to the codefendant is 'reasonable.'" *United States v. Vogl*, 374 F.3d 976, 983–84 (10th Cir. 2004). In examining the reasonableness of a period of exclusion, courts consider three factors: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Id.* at 984 (citation omitted).

      The first factor weighs against the exclusion of time. Adegboruwa has been in pretrial detention for over four years. The second factor weighs in favor of the exclusion of time because Adegboruwa concedes that he has not pursued a speedy trial, much less zealously pursued a speedy trial. Finally, the third factor weighs heavily in favor of excluding time. There is a "strong presumption favoring trying properly joined defendants together." *United States v. Zar*, 790 F.3d 1036, 1043 (10th Cir. 2015). Indeed, "[w]here the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred." *Vogl*, 374 F.3d at 984 (citation omitted). The government has charged Isong and Adegboruwa jointly with conspiracy to distribute oxycodone, distribution of oxycodone, and conspiracy to commit money laundering. The government intends to call over 30 witnesses (very few of whom are local and many who will have to travel long distances or from foreign jurisdictions), introduce around 500 exhibits into evidence, and present thousands of electronic communications to the jury in its case against Adegboruwa. Because there is substantial overlap between the conspiracy claims and the distribution claim shared by Adegboruwa and Isong, separate trials for these defendants would create a substantial burden for the court and the government to try these defendants

separately. Weighing the three *Vogl* factors, the court finds that factors two and three outweigh the first factor. Accordingly, the exclusion of time from the speedy trial calculation requested by the government is justified under 18 U.S.C. § 3161(h)(6).

*   *   *

Based on the above findings, the court grants the government's motion to continue, ECF No. 554, and continues the trial scheduled for September 5, 2023 until December 4, 2023. Pursuant to 18 U.S.C. § 3161(h)(6) & (7)(A), the court excludes time between August 21, 2023 and December 4, 2023 for the speedy trial calculation.

DATED September 5, 2023

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge