IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>OLUWOLE ADEGBORUWA and ENRIQUE ISONG<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING OLUWOLE ADEGBORUWA'S RULE 29/RULE 33 MOTIONS<br><br>Case No. 2:19-cr-00260-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

   The government charged Oluwole Adegboruwa (Adegboruwa) with engaging in a continuing criminal enterprise, conspiracy to distribute oxycodone, three counts of distribution of oxycodone, use of the mail in furtherance of drug trafficking, and conspiracy to commit money laundering. Adegboruwa went to trial on these charges. The jury returned a guilty verdict on all counts. Before the court are three related motions: Adegboruwa's combined motion for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure and for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, ECF No. 764, and two supplemental motions for a new trial under Rule 33. ECF Nos. 931, 944. These motions are all DENIED.

ANALYSIS

I.  MOTION FOR JUDGMENT OF ACQUITTAL

   Rule 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." In considering a motion under Rule 29, the court "ask[s] only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond

a reasonable doubt." *United States v. McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000) (citation omitted). The court "must not weigh conflicting evidence or consider the credibility of the witnesses, but simply 'determine whether the evidence, if believed, would establish each element of the crime.'" *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (citation and alteration omitted). When evaluating the sufficiency of the evidence supporting a conviction, courts "owe considerable deference to the jury's verdict." *United States v. Mullins*, 613 F.3d 1273, 1280 (10th Cir. 2010).

Adegboruwa argues for a judgment of acquittal for two of the counts for which the jury found him to be guilty: (1) engaging in a continuing criminal enterprise and (2) conspiracy to distribute oxycodone.

      A.      *Continuing Criminal Enterprise*

In order to find a defendant guilty of engaging in a continuing criminal enterprise, a jury must conclude that (1) the defendant committed at least three predicate drug trafficking offenses, (2) the offenses were part of a continuing series of violations, (3) the defendant committed the predicate offenses in concert with five other persons, (4) the defendant was an organizer, supervisor, or manager of those five persons, and (5) the defendant obtained substantial income or resources from the series of violations. 21 U.S.C. § 848(c); *Richardson v. United States*, 526 U.S. 813, 818 (1999). Adegboruwa argues that the evidence submitted at trial was insufficient to prove beyond a reasonable doubt that he was an organizer, supervisor, or manager of five other individuals who helped him to commit the predicate drug trafficking offenses.

First, Adegboruwa asserts that he was not an organizer, supervisor, or manager of three of his codefendants: Enrique Isong, Sylvester Isong, and Ngom Priso. Adegboruwa does not dispute that these individuals supplied oxycodone pills to him for resale to end users over the dark web. He argues, however, that the evidence presented at trial shows that he had only a buyer/seller

relationship with these individuals, and not the managerial relationship required under the continuing criminal enterprise statute. The court disagrees.

"[A] mere buyer-seller relationship, *without more,* would be insufficient to establish that [a defendant] held some managerial role" within the meaning of § 848(c). *United States v. Apodaca*, 843 F.2d 421, 426 (10th Cir. 1988). But evidence that a supplier of narcotics fronted illegal drugs to street-level dealers on a consignment basis, organized meetings with the dealers, controlled the amount allocated to each dealer, and offered to pay for a lawyer if a dealer were arrested is sufficient to prove that the supplier was more than just a seller and that he managed the dealers. *Id.* at 427.

Similarly, the evidence presented to the jury in this case was sufficient to prove that Adegboruwa was more than an arms-length buyer of bulk quantities of oxycodone from Enrique Isong, Sylvester Isong, and Priso. The government presented evidence that Adegboruwa was in the process of setting up an operation in Los Angeles, where these individuals would acquire pharmacy grade oxycodone and then ship it directly to Adegboruwa's customers. Adegboruwa's emails to customers show that he supervised both the acquisition of oxycodone and the Southern California shipping operation. Exh. 97 ("I have my boys buying today products to ship out for tomorrow . . . ."); ("I was on the road to Cali yesterday-Thursday because our Cali shipping OPS is not settled in yet to standard."); ("I needed 2 days to straighten the guys in Cali out . . . ."). Priso testified that in addition to transporting pills from Los Angeles to Adegboruwa's residence in Las Vegas, Adegboruwa also instructed Priso how to package and ship pills to customers himself. Indeed, Adegboruwa fired Priso from this role because he did not perform these tasks up to Adegboruwa's high standards. Additionally, an email authored by Adegboruwa showed that he supervised Sylvester Isong, who was undergoing dialysis: "I am now on ground in Cali &

operation is going smoothly today-Thursday. My boy in Cali got sick & in Dialysis so I am back in LA & orders will ship today-THURSDAY." Thus, the government presented evidence that Adegboruwa supervised Priso and Sylvester Isong in relation to his drug distribution operation.

Additionally, the government presented evidence of dozens of messages that Enrique Isong sent to Adegboruwa informing him of amounts of oxycodone pills that were being transported from Los Angeles to Las Vegas. One of these messages showed that Adegboruwa managed and organized Enrique Isong's efforts to acquire oxycodone pills for resale over the dark web: "Papa can we Do the maths today I think I need some money to work today." Moreover, Adegboruwa kept meticulous records of his sales of oxycodone to end users in order to calculate commission payments to Enrique Isong for his share of the revenue for the pills that he had supplied. Thus, there is evidence that Adegboruwa, at minimum, organized their joint efforts to obtain and sell oxycodone pills. *See Apodaca*, 843 F.2d at 426 ("[A]n organizer can be defined as a person who puts together a number of people engaged in separate activities and arranges them in their activities in one essentially orderly operation or enterprise."). Therefore, Adegboruwa had more than a mere buyer/seller relationship with Enrique Isong.

Adegboruwa also argues that Nyla Watson could not be included as a member of the continuing criminal enterprise because she did not know what was in the packages that she delivered to the post office on behalf of the criminal enterprise. He contends, therefore, that she was merely an innocent participant in the drug distribution scheme. *See United States v. Smith*, 24 F.3d 1230, 1234 (10th Cir. 1994) ("[I]nnocent participants in a criminal activity may not be counted as part of a continuing criminal enterprise."). But Watson admitted in her Statement in Advance of Plea on the charge against her for conspiracy to distribute oxycodone that she avoided asking questions about the packages that she delivered because she was aware of the high

4

probability that the packages contained controlled substances. This document was entered into evidence for the jury's consideration. Based on this evidence, the jury could conclude that Watson was not merely an innocent participant in the drug distribution scheme because she knew that the packages probably contained illegal drugs.

Additionally, Adegboruwa contends that Arinola Adegboruwa, Adewole Adegboruwa, and Asley Robinson should be counted together as only one participant in the criminal enterprise that he supervised because these individuals occupied the same role in the enterprise (shipment packager) at different points in time. In other words, Adegboruwa argues that these participants merely replaced each other in the same role and that they should be counted jointly as a single participant. In support of this argument, Adegboruwa relies upon dicta from a Seventh Circuit opinion where that court mused about a hypothetical small narcotics distributor:

> A small time dope dealer who keeps to himself and has a single mule to smuggle the drug into the country is outside the statute's scope. The dealer's need to replace his aide (because of arrests or the difficulty of getting good help in the business) would not authorize a CCE prosecution on the theory that the small-timer had one servant in January, a second in February, a third in March, and so on. The organization would never be larger than two.

*United States v. Bond*, 847 F.2d 1233, 1237 (7th Cir. 1988).

This dicta from *Bond* is not the law in the Tenth Circuit. Other Seventh Circuit opinions have limited or cast doubt on the *Bond* dicta. *See, e.g.*, *United States v. Bafia*, 949 F.2d 1465, 1471 (7th Cir. 1991) ("[The defendant] argues that the government must prove simultaneous supervision of five people, none of whom are replacements for others who have left the enterprise. But such a position is not an accurate reading of *Bond*."). More importantly, the Tenth Circuit has rejected the *Bond* dicta in an unpublished opinion. In *United States v. Almaraz*, No. 04-2227, 2005 WL 3475787, at *3–*4 (10th Cir. Dec. 20, 2005), the Tenth Circuit considered whether defense counsel had been deficient for failing to raise the replacement-worker theory described in the *Bond* dicta.

5

Citing Tenth Circuit caselaw stating that the supervisory relationship with five other individuals need not exist at the same time, the *Almaraz* court held: "The language in *Bond* relied upon by Mr. Almaraz does not represent the law in this circuit." *Id.* at *4 (citing *United States v. Almaraz*, 306 F.3d 1031, 1040 (10th Cir. 2002)). The court finds the reasoning of the Tenth Circuit's unpublished *Almaraz* opinion to be persuasive and rejects Adegboruwa's replacement worker theory.[1]

Finally, Adegboruwa argues that Arinola Adegboruwa, Adewole Adegboruwa, and Robinson could not be counted among the five individuals that he supervised because they did not have knowledge of the full scope of the drug distribution conspiracy. The court rejects this argument as well. As noted above, "innocent participants in a criminal activity may not be counted as part of a continuing criminal enterprise." *Smith*, 24 F.3d at 1234. But there is no requirement that the participant have a complete understanding of the scope and objectives of the criminal enterprise. These three individuals all testified at trial that they knew that they were packaging oxycodone pills to ship them to Adegboruwa's customers. Because they were not innocent participants in the enterprise, they may count towards the five supervised participants in a continuing criminal enterprise.

Accordingly, the court denies Adegboruwa's Rule 29 motion for judgment of acquittal for the continuing criminal enterprise charge. The government presented evidence that could convince a reasonable jury to find beyond a reasonable doubt that he managed or organized at least five other individuals to further his drug distribution enterprise.

---

[1] Even if the Tenth Circuit recognized a replacement-worker theory, Adegboruwa does not point to trial evidence establishing that Arinola Adegboruwa, Adewole Adegboruwa, and Robinson were replacement workers occupying the same position at different times.

### B. *Conspiracy to Distribute Oxycodone*

Adegboruwa also challenges his conviction on the charge of conspiracy to distribute oxycodone. But he does not argue that the evidence presented at trial was insufficient to support this charge. Indeed, Adegboruwa testified at length during his trial that, in concert with other individuals, he sold large quantities of oxycodone to customers he obtained over the dark web. Instead, he contends that the court erred in instructing the jury on this charge. Because instructional error is not a proper Rule 29 argument, the court will consider it in conjunction with Adegboruwa's Rule 33 contentions.

## II. MOTION FOR A NEW TRIAL

"[T]he court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). "A motion for a new trial is not regarded with favor and should only be granted with great caution." *United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997).

Adegboruwa first argues that the interests of justice require a new trial because the court erred in instructing the jury regarding the distribution and conspiracy to distribute charges. The government charged Adegboruwa with violating 21 U.S.C. § 841(a), which makes it unlawful to knowingly or intentionally "manufacture, distribute, or dispense . . . a controlled substance." Adegboruwa contends that the court should have instructed the jury about his theory that he, at most, was guilty of violating § 841(h), which makes it unlawful to knowingly "deliver, distribute, or dispense a controlled substance by means of the Internet, except as authorized by this subchapter." 21 U.S.C. § 841(h)(1)(A). His argument is unclear, but Adegboruwa appears to assert that § 841(a) and § 841(h) are mutually exclusive and that his guilt under subdivision (h) would preclude his guilt under the subdivision (a).

Adegboruwa, however, has not presented any authority supporting his contention that the distribution of controlled substances over the internet is a defense to a distribution or conspiracy to distribute charge brought under § 841(a). Indeed, the Tenth Circuit has explicitly rejected a similar argument. In *United States v. Fellman*, 549 F.2d 181, 182 (10th Cir. 1977) (per curiam), the government charged a medical doctor with unlawfully distributing a controlled substance in violation of § 841(a) for writing prescriptions without a legitimate medical reason. The doctor asserted that his conviction on this charge was invalid because he should have been charged with illegally dispensing a controlled substance instead of illegal distribution. *Id.* The Tenth Circuit disagreed, holding that a doctor may be guilty of distributing controlled substances under § 841(a) if he or she exceeds his or her legal authority to dispense drugs. *Id.* In other words, "physicians may be prosecuted for both unlawful dispensing and distributing when their activities go beyond the usual course of professional practice." *Id.* at 182-83; *accord United States v. Craig*, 823 F. App'x 231, 239–41 (5th Cir. 2020) (per curiam) (unpublished) (rejecting a defendant doctor's argument that his conviction under § 841(a) should be overturned because dispensing and distributing a controlled substance are mutually exclusive charges). This court similarly finds that it did not err by instructing the jury on the distribution charges against Adegboruwa rather than on an uncharged theory of dispensing controlled substances over the internet.

Next, Adegboruwa argues that the government constructively amended the indictment to charge him with operating an unlicensed online pharmacy. Based on this premise he argues that his conviction must be nullified because a "court cannot permit a defendant to be tried on charges that are not made in the indictment." *See United States v. Williamson*, 53 F.3d 1500, 1512 (10th Cir. 1995) (citation omitted). But Adegboruwa does not point to any evidence that the government constructively amended the indictment. Indeed, the government consistently opposed

8

Adegboruwa's attempts to instruct the jury on his unlicensed online pharmacy theory. Because the government did not amend the indictment, the court did not err by permitting Adegboruwa to be tried on the charges contained in the controlling indictment.

Adegboruwa also argues in a single sentence that he is entitled to a new trial because a government witness "admitted on the stand that the government had to adopt a tactical advantage knowing it was not ready for the trial of August 28, 2023." But Adegboruwa does not provide any explanation or citation to the trial transcript, and the court does not recall the witness making such a statement. Accordingly, the court rejects this argument as unfounded and insufficiently briefed.

Finally, in two supplemental motions, Adegboruwa argues that he discovered new evidence requiring a new trial. ECF Nos. 931, 944. He contends that during the September 9, 2024 forfeiture trial, he learned that the modification date of an Excel file that had been presented as evidence during the guilt phase of the trial had been altered. Adegboruwa asserts that this evidence regarding the modification date casts doubt on its integrity, justifying a new trial. The court disagrees. The government explained that the process of labeling the Excel file in preparation for trial generated the new modification date and that the file contents had not been altered. Absent any evidence that the content of the file had been modified in any way, the court credits the government's explanation and denies Adegboruwa's supplemental motions for a new trial.

## CONCLUSION

For the above-stated reasons, the court denies (1) Adegboruwa's motion for a judgment of acquittal and motion for a new trial, ECF No. 764, and (2) his supplemental motions for a new trial, ECF Nos. 931, 944.

DATED November 7, 2024.

                    BY THE COURT

                    _____
                    Jill N. Parrish
                    United States District Court Judge